**No. 23-1034**

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

_____

United States of America,

*Plaintiff-Appellee,*

v.

Ronald Bruce Myers

*Defendant-Appellant.*

On Appeal from the United States District Court
for the Eastern District of Washington
No. 2:04-cr-00173-MKD-1
Hon. Mary K. Dimke

_____

**APPELLANT'S PETITION FOR REHEARING OR REHEARING
EN BANC**

_____

W. Miles Pope
Goddard Pope PLLC
967 E. Parkcenter Blvd. No. 1010
Boise, ID 83706
(208) 329-5671
miles@goddard-pope.com

*Attorneys for Petitioner-Appellant*
Ronald Bruce Myers

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES.................................................................iv

INTRODUCTION...............................................................................1

BACKGROUND ..................................................................................2

ARGUMENT .......................................................................................5

I. This case should be reheard because the panel's decision creates circuit conflicts between the Ninth Circuit, on the one hand, and the First, Fifth, Sixth, and Eighth Circuits, on the other, over the scope of the mandatory restitution turnover statute. ...........5

    A.    The majority creates a circuit conflict by holding that § 3664(n) applies to gradual accumulations of resources that only become substantial over time. .......................5

    B.    The majority's decision forces a conflict on the crucially important question of whether mandatory restitution turnover applies to prison wages..................................8

II. The majority's interpretation of the mandatory restitution turnover statute is untenable.....................................................12

    A.    Section 3664(n) applies only to resources that are substantial when received, and the majority's contrary view rests on a glaring misapplication of the Dictionary Act..................................................................................12

    B.    The majority's interpretation makes surplusage of larger swathes of § 3664(n)..........................................16

    C.    The majority's interpretation fails to properly harmonize § 3664(n) and § 3664(k). ............................18

III. It is exceptionally important to correct the panel's error. ......20

ii

CONCLUSION ......................................................................22

CERTIFICATE OF COMPLIANCE.......................................23

CERTIFICATE OF SERVICE................................................24

# TABLE OF AUTHORITIES

## Cases

*Carr v. United States*, 560 U.S. 438 (2010)............................................14

*Dolan v. United States*, 560 U.S. 605 (2010) ........................................20

*Garcia v. Holder*, 621 F.3d 906 (9th Cir. 2010) ....................................10

*Hewitt v. United States*, 145 S. Ct. 2165, 222 L. Ed.2d 613 (2025)........15

*McOmie-Gray v. Bank of Am. Home Loans*, 667 F.3d 1325 (9th Cir. 2012) ........................................................................................................10

*Padilla-Ramirez v. Bible*, 882 F.3d 826 (9th Cir. 2018) ....................2, 12

*United States v. Carson*, 55 F.4th 1053 (6th Cir. 2022) ....................6, 13

*United States v. Hughes*, 914 F.3d 947 (5th Cir. 2019) ...............6, 13, 17

*United States v. Johnson*, 256 F.3d 895 (9th Cir. 2001) (en banc).........10

*United States v. Ketchum*, 201 F.3d 928 (7th Cir. 2000) .......................13

*United States v. Kidd*, 23 F.4th 781 (8th Cir. 2022)........... 7, 9, 11, 13, 22

*United States v. Myers*, 136 F.4th 917 (9th Cir. 2025) 2, 3, 5, 6, 9, 10, 11, 14, 16, 17, 20

*United States v. Myers*, 136 F.4th 917 (9th Cir. 2025) (McKeown, J., dissenting) ............................................... 3, 4, 7, 8, 9, 12, 16, 18, 19

*United States v. Saemisch*, 70 F.4th 1 (1st Cir. 2023)........................6, 12

*United States v. Sullivan*, 131 F.4th 776 (9th Cir. 2025).......................13

## Statutes

18 U.S.C. § 3664(k)...........................................................3, 4, 18, 19, 20

18 U.S.C. § 3664(n).. 1, 2, 3, 4, 5, 7, 8, 9, 10, 11, 12, 14, 15, 16, 18, 19, 20, 22

The Dictionary Act, 1 U.S.C. § 1 ..................................................14, 15, 17

**Other Authorities**

BOP, *Stay in touch* ...................................................................22

Christopher Zoukis, *Inmate Financial Responsibility Program: Shifting the Burden of Crime to the Families of Inmates* (Jul. 13, 2013)....21

Johanna B. Folk, et al., *Behind Bars but Connected to Family: Evidence for the Benefits of Family Contact During Incarceration*, 33 J. Fam. Psych. 453 (2019) .................................................................21

*See* Scott Hoke & Randy Demory, Nat'l Instit. of Corrections, *Inmate Behavior Management: Guide to meeting Basic Needs* 8 (2014) ...21

U.S. Dep't of Just., Office of the Inspector General, *Audit of the Federal Bureau of Prisons' Inmate Financial Responsibility Program* 7 (Aug. 2024) ...................................................................................19

## INTRODUCTION

Ronald Myers respectfully petitions this Court for rehearing or rehearing en banc. The panel's divided decision holds that 18 U.S.C. § 3664(n)—the mandatory restitution turnover statute that applies across the federal criminal code—applies to gradual aggregations of resources that only become substantial over time. This holding conflicts with the decisions of every circuit—the First, Fifth, Sixth, and Eighth—that has addressed this issue in a published decision, all of whom agree that § 3664(n) applies only to resources that are substantial when received.

As Judge McKeown's dissent explains, the majority's decision also contravenes § 3664(n)'s text, runs roughshod over core principles of statutory construction, and undermines the structure of federal restitution-enforcement law. And it will lead to a host of damaging policy consequences: undermining federal inmates' rehabilitation, degrading their family ties, and disrupting the orderly management of the Bureau of Prisons.

This case presents an issue of truly exceptional importance. Circuit splits are particularly disfavored where "the rules at issue are

1

best applied uniformly." *Padilla-Ramirez v. Bible*, 882 F.3d 826, 836 (9th Cir. 2018). If it stands, the circuit split the majority creates will produce a situation where different inmates in the same federal prisons will be subject to different rules based on the happenstance of whether they were sentenced in the Ninth Circuit. This will intensify the adverse policy consequences of the majority's erroneous decision. Mr. Myers's respectfully petitions for rehearing or rehearing en banc.

## BACKGROUND

This case concerns 18 U.S.C. § 3664(n), the mandatory restitution turnover statute that applies across the federal criminal code. Section 3664(n) applies to incarcerated individuals who "receive[] substantial resources from any source, including inheritance, settlement, or other judgment, during a period of incarceration." It requires them to "apply the value of such resources to any restitution or fine still owed," regardless of whether turnover is in the interests of justice. *Id.*

Over a period of nine years, Ronald Myers accumulated $1,233.73 in his BOP inmate trust account through "small, periodic deposits from family and friends." *United States v. Myers*, 136 F.4th 917, 921 (9th Cir. 2025). The government could have sought seizure of this sum under 18

2

U.S.C. § 3664(k)—the restitution-enforcement provision that empowers courts, in the interests of justice, to order turnover of assets when a defendant's material circumstances have changed. But it did not. Instead, it pursued Mr. Myers's assets under § 3664(n)—the mandatory restitution statute that applies when an inmate "receives substantial resources from any source." *See id.* at 921.

The district court granted the government's § 3664(n) turnover motion, and, in a divided opinion, a panel of this Court affirmed. *See id.* at 921. Even though § 3664(n) speaks in the present tense—providing for mandatory turnover of substantial assets that an incarcerated defendant "*receives* . . . from any source"—the panel majority held that § 3664(n) applies to "the gradual accumulation of cash deposits from family and friends in an inmate's trust account." *Myers*, 136 F.4th at 920. According to the majority, § 3664(n) applies to such gradually accumulated assets regardless of whether any portion of those assets was substantial when it was received. *Id.*

Writing in dissent, Judge McKeown explained that—because of its use of the present tense "receives"—§ 3664(n) applies only where a defendant receives assets that are substantial at the time of receipt. *Id.*

3

at 930 (McKeown, J., dissenting). She pointed out that the majority's contrary reading violates the anti-surplusage canon because it makes the statute's reference to "inheritance, settlement, or other judgment" redundant. *Id.* She described how her reading—unlike the majority's—harmonizes the mandatory turnover provision of § 3664(n) with the discretionary-turnover provision of § 3664(k), ensuring that each provision applies only where sensible. *Id.* at 930, 931. She emphasized that the majority's decision conflicts with the published decisions of every other circuit that has addressed § 3664(n)'s scope. *See id.* at 931. And she identified a particularly problematic consequence of the majority's decision: that its logic and reasoning necessarily imply that § 3664(n) applies to prison wages. This conclusion has been repudiated by every circuit court to have considered it. And it is a conclusion the government, in this case, acknowledged was unacceptable. *Id.*

Mr. Myers now petitions for rehearing or rehearing en banc.

## ARGUMENT

**I. This case should be reheard because the panel's decision creates circuit conflicts between the Ninth Circuit, on the one hand, and the First, Fifth, Sixth, and Eighth Circuits, on the other, over the scope of the mandatory restitution turnover statute.**

The panel's decision must be reheard because it creates two conflicts between the Ninth Circuit and its sister circuits over the proper interpretation of § 3664(n).

### A. The majority creates a circuit conflict by holding that § 3664(n) applies to gradual accumulations of resources that only become substantial over time.

*First*, the majority creates a general interpretative conflict over § 3664(n)'s meaning. The majority holds that § 3664(n) applies "not just to one-time financial windfalls"—or resources that are substantial at the time of receipt—"but also to substantial aggregated sums from multiple sources . . . that gradually accrue in an inmate's trust account" over time. *Myers*, 136 F.4th at 922. This ruling conflicts with the published decisions of every other circuit to have weighed in on the issue. Those circuits—the First, Fifth, Sixth, and Eighth—all hold that § 3664(n) applies only to sudden windfalls or substantial resources received, at once, from a single source.

The majority itself acknowledges that its decision places the Ninth Circuit in conflict with published decisions issued by the First, Fifth, and Sixth Circuits—all of which hold that § 3664(n) applies only to "sudden windfalls," not to gradual accumulations of resources that become substantial over time. *See id.* at 925 (acknowledging that "Myers finds support in a handful of cases limited § 3664(n) to sudden financial windfalls" (while citing three of the four published decisions from other circuits on this issue: *United States v. Saemisch*, 70 F.4th 1 (1st Cir. 2023); *United States v. Carson*, 55 F.4th 1053 (6th Cir. 2022); and *United States v. Hughes*, 914 F.3d 947 (5th Cir. 2019)).[1]

As Judge McKeown explains, the majority's decision is also incompatible with the one additional published circuit decision to have

_____

[1] Even as it recognizes that its interpretation of § 3664(n) is inconsistent with the Sixth Circuit's decision in *Carson*, the majority claims that *Carson* supports its interpretation because *Carson* says, in dicta, that § 3664(n) could apply to a trust account that contains substantial resources from family deposits and stimulus checks. *Myers*, 136 F.4th at 922. But as Judge McKeown points out, *Carson* is silent on the timing of when such a trust account would have to receive such resources before § 3664(n) would apply. It simply doesn't endorse the idea—which is, in any event, inconsistent with the "windfall" interpretation of § 3664(n) that *Carson* adopts—that § 3664(n) applies to resources that become substantial over time. *Myers*, 136 F.4th at 932.

6

analyzed § 3664(n)'s scope: the Eighth Circuit's decision in *United States v. Kidd*, which holds that § 3664(n) applies exclusively to "single transactions from outside sources" and thus necessarily rejects the majority's conclusion that it applies to gradual accumulations of resources that only become substantial over time. *Myers*, 139 F.4th at 931 (McKeown, J., dissenting) (quoting 23 F.4th 781, 787 (8th Cir. 2022)). The majority accordingly creates a circuit conflict over the meaning of § 3664(n) where no conflict existed before.

By contrast, Judge McKeown's interpretation avoids opening a circuit split. The decisions of the First, Fifth, Sixth, and Eighth Circuits are all compatible with construing § 3664(n) to apply only to resources that are substantial upon receipt—not to resources that become substantial over time. The "sudden windfall" formulation favored by the First, Fifth, and Sixth Circuits is squarely in keeping with Judge McKeown's analysis, given that the concept of a "windfall" is sensibly cashed out as "resources that are substantial at the time of receipt." The same is true of the Eighth Circuit's formulation, on which § 3664(n) applies only to "single [substantial] transactions from outside sources." *Kidd*, 23 F.4th at 787. These are all ways of expressing Judge

McKeown's core idea: that § 3664(n) applies to resources that are substantial when received.

Though the circuits have not all used the same words to articulate § 3664(n)'s scope, they have—until the majority's decision in this case—all agreed on the bottom line. Whether formulated in terms of "sudden windfalls" or in terms of "single transactions from outside sources," the circuit courts have all agreed with Judge McKeown that § 3664(n) applies exclusively to substantial resources received in one fell swoop, not to resources that only gradually become substantial through the accumulation of assets over time.

Rehearing or rehearing en banc is necessary to preserve uniformity among the circuits.

### B. The majority's decision forces a conflict on the crucially important question of whether mandatory restitution turnover applies to prison wages.

***Second***, the majority's decision also forces a conflict on a specific and crucially important issue: prison wages. "There is an emerging consensus across circuits exempting prison wages from § 3664(n)." *Myers*, 136 F.4th at 931 (McKeown, J., dissenting). For good reason. Failing to exempt prison wages from turnover under § 3664(n) would

"significantly threaten prison security and administration." *Kidd*, 23 F.4th at 787 (seizure of prison wages risks "hurting inmate morale, discouraging inmates from gaining the benefits of prison work, and interfering with the BOP's carefully constructed Inmate Financial Responsibility Program that includes provisions for paying restitution obligations while incarcerated" (citation omitted)).

The prison-wage exemption to § 3664(n) is well-established, and it is important. It has also been implicitly, but necessarily, rejected by the panel's decision in this case. If, as the majority holds, § 3664(n) applies to gradual accumulations of resources that become substantial over time, then there is no "principled" construction of the statute on which it exempts prison wages from its scope. *Myers*, 136 F.4th at 931 (McKeown, J., dissenting). It follows that the panel's decision forces a circuit split on whether § 3664(n) applies to prison wages.

The majority attempts to downplay this implication of its decision by asserting that it "leave[s] for another day whether § 3664(n) . . . authorizes turnover of an inmate's prison wages." *Myers*, 136 F.4th at 925 n.3. But when that day comes, a future panel will have no choice but to hold that § 3664(n) applies to prison wages. That's because the

logic necessary to a published decision is binding on future panels. *See McOmie-Gray v. Bank of Am. Home Loans*, 667 F.3d 1325, 1329 (9th Cir. 2012) (published panel decisions become "the law of the circuit" as to both their "'logically necessary' holdings" and even "reasoned dicta" (citing *United States v. Johnson*, 256 F.3d 895, 914 (9th Cir. 2001) (en banc)); *see also Garcia v. Holder*, 621 F.3d 906, 911 (9th Cir. 2010) ("[R]easoning central to a panel's decision [i]s binding [on] later panels.").

And the majority's reasoning in this case could not be clearer. The majority concluded that § 3664(n) applies to "substantial aggregated sums" that "gradually accrue in an inmate's trust account" no matter the source. *Myers*, 136 F.4th at 922. In reaching this conclusion, the majority rested on the "expansive meaning" of the term "any" in the phrase "any source." *Id.* at 923-24. It reasoned that this term "is generally used in the sense of 'all' or 'every' and its meaning is most comprehensive." *Id.* at 924. It further held that the broader context of § 3664(n) supports a maximally comprehensive interpretation of the statute, on which it applies to substantial resources from "whatever" source or combination of sources. *Id.* at 924. The majority clearly

10

rejected any possible textual limitations on the sources to which

§ 3664(n) can apply.

If left undisturbed, the majority's reasoning will necessarily bind

any future panel considering whether § 3664(n) applies to prison wages.

And it will force the conclusion that there is no § 3664(n) prison-wage

exemption in the Ninth Circuit. Prison wages are a "source" of assets.

And they can easily aggregate, over time, to constitute "substantial

resources." *See Myers*, 136 F.4th at 929 (noting that Mr. Myers earned,

in prison wages, more than double what was seized from his trust

account). The panel's decision in this case thus forces the conclusion

that, in the Ninth Circuit, prison wages are not exempt from § 3664(n).

~     ~     ~

If the majority's interpretation of § 3664(n) stands, then different

inmates in the same BOP institutions will be subject to different

restitution turnover regimes depending on whether they were sentenced

in the Ninth Circuit or elsewhere. This disparate treatment will

undermine prison morale and complicate the administration of the

Inmate Financial Responsibility Program. *See Kidd*, 23 F.4th at 787

(interpreting § 3664(n) so as not to "interfer[e] with the" IFRP).

11

Preserving circuit uniformity on the meaning of § 3664(n) is particularly important, and there is thus particularly good reason to rehear this case. *See Padilla-Ramirez*, 882 F.3d at 836 ("[T]he rules at issue are best applied uniformly.")

## II. The majority's interpretation of the mandatory restitution turnover statute is untenable.

In addition to creating a circuit split over § 3664(n)'s scope, the majority's decision also misinterprets that provision. Judge McKeown's dissent gets it right: properly interpreted, § 3664(n) applies only to resources that are substantial at the time of receipt—not to resources that gradually become substantial over time.

### A. Section 3664(n) applies only to resources that are substantial when received, and the majority's contrary view rests on a glaring misapplication of the Dictionary Act.

***First***, because it uses "the present tense 'receives'," § 3664(n) only applies to resources that are substantial when they are received. *Myers*, 135 F.4th at 930 (McKeown, J., dissenting). The reason for this, as Judge McKeown explains, is that the most nature reading of "'receives' . . . requires contemporaneity: the resources must be substantial at the time of receipt." *Id.*; *accord Saemisch*, 70 F.4th at 6 (section 3664(n) "is

12

*triggered* by a defendant's receipt of 'substantial resources'" (emphasis added)); *Hughes*, 914 F.3d at 951 ("*receipt* of a windfall during imprisonment *triggers*" § 3664(n) (emphases added)); *Carson*, 55 F.4th at 1056 (section 3664(n) applies "[i]f [a defendant] *receives* any windfall" (emphasis added)); *Kidd*, 23 F.4th at 787 ("[Section] 3664(n) applies to an inmate's *receipt* of substantial resources. . . . The inference from that wording is that Congress focused on single transactions from outside sources[.]" (emphasis added)).

Courts have long recognized that a statute's use of the "simple present tense . . . often indicates contemporaneous action." *United States v. Ketchum*, 201 F.3d 928, 933 (7th Cir. 2000). And that reading accords with this Court's recent approach to such statutes. *See, e.g.*, *United States v. Sullivan*, 131 F.4th 776, 785 (9th Cir. 2025) ("In the statute, 'without authorization' modifies the present-tense verb 'accesses.' An actor's authorization, or lack thereof, is [therefore] assessed *at the moment of access*." (citation omitted) (emphasis added)).

The majority says its interpretation is dictated by the Dictionary Act. The majority notes that the Dictionary Act provides that "words used in the present tense include the future as well as the present."

13

*Myers*, 136 F.4th at 923 (quoting 1 U.S.C. § 1). From this, it erroneously concludes that "resources can[] be combined to *become* substantial and still fall within [§ 3664(n)'s] ambit." *Id.*

But combining resources—accrued over time—into one substantial aggregation is a *backward-looking*, not forward-looking, exercise. The majority's interpretation thus allows turnover under § 3664(n) based on resources a defendant has received *in the past*, not based on resources he will receive in the future. Indeed, that is exactly what the Court does here: it combines resources Mr. Myers has gradually received over *the past* decade to effectuate a seizure under § 3664(n). *See Myers*, 136 F.4th at 920.

*This*—not Judge McKeown's analysis—runs afoul of the Dictionary Act. By defining the present tense to include the future tense, the Dictionary Act implies that "the present tense generally does not include the past." *Carr v. United States*, 560 U.S. 438, 448 (2010). Applied to § 3664(n), this means that that statute's use of the word "receives" does not allow a court to look backwards to what a defendant has received in the past to conclude that his resources have become

14

substantial. As Judge McKeown explains, courts must instead focus on the moment of receipt.[2]

Rather than construing § 3664(n) to comply with the Dictionary Act, what the majority has in fact done is to rewrite the statute. As the Supreme Court just confirmed, when Congress wants a statute to encompass "a past action that comes up to and touches the *present*," it will draft that statute using "[t]he *present-perfect* tense." *Hewitt v. United States*, 145 S. Ct. 2165, 222 L. Ed.2d 613, 621 (2025) (second emphasis added). The majority has effectively read the present-perfect tense into § 3664(n), interpreting it to apply when a defendant *has received* substantial resources. But § 3664(n) doesn't use the present-perfect tense "has received"; it uses the present tense "receives." Judge McKeown's interpretation gives effect to this congressional choice. The majority's decision—which rests on a simple and glaring misapplication of the Dictionary Act— runs roughshod over it.

---

[2] The majority's point—that "receives" encompasses future transactions—may allow courts to order turnover under § 3664(n) when a defendant will receive substantial resources on an installment basis over time. *See infra* at 17-18. But that is not this case.

15

### B. The majority's interpretation makes surplusage of larger swathes of § 3664(n).

*Second*, the majority's interpretation of § 3664(n) also violates the anti-surplusage canon. By its terms, § 3664(n) applies if an incarcerated individual "receives substantial resources from any source, including inheritance, settlement, or other judgment." As the majority essentially acknowledges, its interpretation of § 3664(n)'s illustrative list of sources—"inheritance, settlement, or other judgment"—makes that list wholly superfluous. *See Myers*, 136 F.4th at 925 (acknowledging "redundancy" in majority's interpretation (citation omitted)). Obviously, if § 3664(n) applies whenever a defendant receives substantial resources—whether all at once or gradually over time—then it also applies when those substantial resources derive from an inheritance, settlement, or judgment, and there is no need to spell that out.

By contrast, Judge McKeown's interpretation gives effect to § 3664(n)'s illustrative list. On her interpretation, the illustrative list "helpfully furnishes three examples where a defendant receives substantial resources in a discrete instance," thus aiding in the proper interpretation of the statute. *Id.* at 930 (McKeown, J., dissenting);

16

*accord Hughes*, 914 F.3d at 951 (gradual accumulations of resources do not "fit the mold . . . [of] the examples listed in § 3664(n)").

In an effort to rebut this analysis, the majority observes that inheritances, settlements, and other judgments can be "distributed in periodic installments over time," suggesting that § 3664(n)'s illustrative list does not support the idea that the statute only applies to resources that are substantial upon receipt. *Id.* at 925. Again, however, the Dictionary Act—the putative lynchpin of the majority's decision—rebuts this point. Because, under the Dictionary Act, the present tense includes the future, Congress's use of the present tense "receives" in § 3664(n) means that the statute applies if a defendant receives *or will receive* substantial resources from any source—including in the form of a structured inheritance, settlement, or other judgment.

That is in keeping with Judge McKeown's analysis. At the discrete moment the defendant becomes entitled to inheritance or receives a settlement or other judgment, § 3664(n) applies so long as he receives or *will receive* substantial resources as a result. On Judge McKeown's interpretation (but not the majority's), the enumerated examples in

17

§ 3664(n) help clarify this point. Judge McKeown's interpretation respects the anti-surplusage canon; the majority's violates it.

### C. The majority's interpretation fails to properly harmonize § 3664(n) and § 3664(k).

***Finally***, Judge McKeown's interpretation makes better sense of the broader structure of restitution-enforcement law. As Judge McKeown explains, the mandatory turnover provision of § 3664(n) "must be read in conjunction with 18 U.S.C. § 3664(k)"—the discretionary turnover provision of restitution-enforcement law that empowers (but does not require) courts, in the interests of justice, to issue turnover orders whenever there is "any material change in the defendant's economic circumstances." *Myers*, 136 F.4th at 929.

Judge McKeown's interpretation harmonizes these two provisions. It makes sense that Congress would require mandatory turnover when a defendant contemporaneously receives substantial resources. A defendant in these circumstances is on clear notice that the resources he has received will be subject to turnover (so he will not rely on them in planning for his post-carceral life). And it makes sense that Congress would have concluded that there will be virtually no circumstances in

18

which a defendant who receives substantial resources in one fell swoop should be able to keep them at the expense of victims.

The situation is far murkier when it comes to deposits—such as friend-and-family contributions—that accumulate gradually over time. "Including resources that could, at some point in the future, become substantial would create a moving target for defendants attempting to comply with § 3664(n)," undermining their notice and opportunity to plan. *Id.* at 930.

It is also easy to imagine circumstances in which the interests of justice will counsel against turnover of such gradual accumulations—at least *in toto*—such as where an indigent defendant has been striking a responsible balance between payments toward restitution and saving money to help them get back on their feet when they release from custody. *Cf.* U.S. Dep't of Just., Office of the Inspector General, *Audit of the Federal Bureau of Prisons' Inmate Financial Responsibility Program* 7 (Aug. 2024) (noting purpose of pre-release encumbrance is "to prepare [inmates] for reentry into society").

The majority's failure to harmonize § 3664(n) and § 3664(k) also risks thwarting *victims'* interests. The majority claims that its

19

interpretation will advance the goal of "help[ing] victims of crime secure prompt restitution." *Myers*, 136 F.4th at 929 (quoting *Dolan v. United States*, 560 U.S. 605, 613 (2010)). But that's far from clear. Instead, the majority's interpretation creates a perverse incentive for incarcerated individuals to avoid triggering § 3664(n) by spending resources as soon as they hit their trust accounts. By contrast, Judge McKeown's interpretation—which allows courts to strike balanced turnover orders in the context of gradually accumulated resources—mitigates this risk. It ensures better overall allocation of inmates' trust assets, both for inmates *and* for victims.

Viewed from every standpoint—rehabilitation, public safety, even victims' rights—Judge McKeown's interpretation more sensibly draws the line between § 3664(n) and § 3664(k) than the majority's does. It is right; the majority is wrong.

### III. It is exceptionally important to correct the panel's error.

Finally, rehearing this case is exceptionally important from the perspective of prison management, inmate rehabilitation, and the preservation of ties between incarcerated individuals and their families.

If, as the majority holds, small deposits from friends and family can be seized whenever they aggregate to as little as $1,233.73, then the practical effect of the majority's decision will be to impair an inmate's family ties and ability to purchase items at commissary. *See, e.g.*, Christopher Zoukis, *Inmate Financial Responsibility Program: Shifting the Burden of Crime to the Families of Inmates* (Jul. 13, 2013) (cataloguing expenses associated with being in prison). It will also impair their ability to save money so that they can get back on their feet when they are released.

These consequences will have an adverse effect on prison population management. *See* Scott Hoke & Randy Demory, Nat'l Instit. of Corrections, *Inmate Behavior Management: Guide to meeting Basic Needs* 8 (2014) (inmates with enough money on their books are "easier inmates to manage"). They will have an adverse effect on rehabilitation. *See* Johanna B. Folk, et al., *Behind Bars but Connected to Family: Evidence for the Benefits of Family Contact During Incarceration*, 33 J. Fam. Psych. 453, 453 (2019) (noting importance of family ties to rehabilitation). They will also have an adverse effect on public safety— because maintaining inmate morale and family ties, and ensuring a

21

successful release plan from prison, is crucial to reducing recidivism. *See, e.g.*, BOP, *Stay in touch*, https://bit.ly/3UILNJt (family ties reduce recidivism risk).

And that's even before getting to the prison-wage issue. When a future panel—bound by the logic of *Myers*—is compelled to hold that § 3664(n) applies to prison wages, the results to prisoner morale and BOP population management will be grievous. *See Kidd*, 23 F.4th at 787.

These practical consequences of the panel's decision make it all the more important—exceptionally so—to grant the petition for rehearing or rehearing en banc and to reject the majority's erroneous interpretation of § 3664(n).

## CONCLUSION

The Court should grant the petition for rehearing or rehearing en banc.

Date: August 4, 2025

> */s/ Miles Pope*
> W. Miles Pope
> Goddard Pope PLLC
> 967 E. Parkcenter Blvd., No. 1010
> Boise, ID 83706
>
> *Attorneys for Petitioner-Appellant*

22

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 11. Certificate of Compliance for Petitions for Rehearing/Responses

*Instructions for this form:* https://www.ca9.uscourts.gov/forms/form11instructions.pdf

**9th Cir. Case Number(s)** | 23-1034

I am the attorney or self-represented party.

I certify that pursuant to Circuit Rule 40-1, the attached petition for panel

rehearing/petition for rehearing en banc/response to petition is *(select one)*:

◉ Prepared in a format, typeface, and type style that complies with Fed. R. App. P.
32(a)(4)-(6) and **contains the following number of words:** | 4,143 |.
*(Petitions and responses must not exceed 4,200 words)*

**OR**

◯ In compliance with Fed. R. App. P. 32(a)(4)-(6) and does not exceed 15 pages.

**Signature** | | **Date** |
*(use "*s/[typed name]*" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 11**      *Rev. 12/01/24*

## CERTIFICATE OF SERVICE

I certify that on August 4, 2025, this brief was served on the government by virtue of being filed through the Ninth Circuit Court of Appeals' electronic filing system.

s/ Miles Pope

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 23-1034 |
| *Plaintiff - Appellee*, | D.C. No. 2:04-cr-00173-MKD-1 |
| v. | |
| RONALD BRUCE MYERS, AKA Rick LNU, AKA Rick Curtis, | OPINION |
| *Defendant - Appellant*. | |

Appeal from the United States District Court
for the Eastern District of Washington
Mary K. Dimke, District Judge, Presiding

Argued and Submitted December 3, 2024
Seattle, Washington

Filed May 6, 2025

Before: Danny J. Boggs,[*] M. Margaret McKeown, and
Ryan D. Nelson, Circuit Judges.

Opinion by Judge R. Nelson;
Dissent by Judge McKeown

---

[*] The Honorable Danny J. Boggs, United States Circuit Judge for the
U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

## SUMMARY[**]

### Criminal Law/Restitution

The panel affirmed the district court's order granting the government's motion to turn over certain funds in Ronald Myers's inmate trust account and apply them to Myers's restitution obligation, in a case that presented the question whether a provision of the Mandatory Victims Restitution Act, 18 U.S.C. § 3664(n), applies to the gradual accumulation of cash deposits from family and friends in an inmate's trust account.

Section 3664(n) requires an inmate who "receives substantial resources from any source, including inheritance, settlement, or other judgment" to put such resources toward unpaid restitution. The government disclaimed any efforts to target Myers's prison wages.

Rejecting Myers's argument that § 3664(n) covers only "one-time, lump-sum windfalls and sudden financial injections" from a single source, the panel held that § 3664(n) applies not just to one-time financial windfalls, but also to substantial aggregated sums from multiple sources—like family and friends—that gradually accrue in an inmate's trust account. Thus, the district court properly invoked § 3664(n) to turn over deposits from family and friends that accrued to form a substantial sum in Myers's inmate trust account.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel rejected Myers's argument that the district court's turnover order contravenes the judgment's restitution provisions.

The panel held that the district court did not abuse its discretion in declining to hold an evidentiary hearing on the composition of Myers's trust account—*i.e.*, to determine which of the funds could be "specifically identified" as prison wages.

Dissenting, Judge McKeown wrote that § 3664(n) applies only to resources that are substantial at the time of receipt. Because the district court assessed whether Myers's trust account was a substantial amount in total, rather than analyzing individual transactions for substantiality, she would vacate the order authorizing payment and remand for the district court to conduct a transaction-by-transaction analysis.

---

## COUNSEL

Brian M. Donovan (argued), Timothy M. Durkin, and Ian L. Garriques, Assistant United States Attorneys; Vanessa R. Waldref, United States Attorney; Office of the United States Attorney, United States Department of Justice, Spokane, Washington; for Plaintiff-Appellee.

W. Miles Pope (argued), Goddard Pope PLLC, Boise, Idaho, for Defendant-Appellant.

**OPINION**

R. NELSON, Circuit Judge:

The Mandatory Victims Restitution Act requires an inmate who "receives substantial resources from any source, including inheritance, settlement, or other judgment" to put such resources toward unpaid restitution. 18 U.S.C. § 3664(n). The question here is whether this provision applies to the gradual accumulation of cash deposits from family and friends in an inmate's trust account. We hold that it does. Because § 3664(n) authorizes a district court to turn over periodic deposits that substantially accrue in an inmate's account, we affirm.

I

In 2005, Ronald Myers pleaded guilty to possessing an implement for counterfeiting state securities and transporting a stolen motor vehicle across state lines. *See* 18 U.S.C. §§ 513(b), 2312. The district court sentenced Myers to 60 months' imprisonment and 3 years' supervised release. It also ordered him to "immediately" begin paying $40,406 in restitution, with payments "[not] less than 25% of [his] monthly gross earnings" while incarcerated.**[1]**

Myers completed his 60-month prison sentence in 2010. But he was reincarcerated on other charges in 2013 and has been in federal custody since. Because Myers still owes restitution from the 2005 conviction, the conditions in that restitution order remain in effect. *See United States v.*

---

[1] Restitution compensates victims for losses "directly resulting from a defendant's offense." *United States v. Sablan*, 92 F.3d 865, 870 (9th Cir. 1996).

*Hankins*, 858 F.3d 1273, 1278 (9th Cir. 2017) (quoting 18 U.S.C. § 3613(b)).

Myers, like other federal inmates, has a trust account maintained by the Federal Bureau of Prisons (BOP). *See* 28 C.F.R. §§ 506.1, 506.2. Since 2013, over $30,500 has been deposited in Myers's account. Most deposits ($27,872) were from family and friends. The rest ($2,747) were prison wages. Myers claims he saved some of the money, but records show he spent most of it. Over nine years, Myers donated $1,580 to charity, sent $1,334 to other individuals, and spent about $128 on subscriptions. He spent the remainder at the prison commissary. As of late 2022, Myers's account contained $1,622.

Myers still owes his victims over $35,000 in restitution. So when the government discovered the activity on Myers's trust account, it asked the district court to direct BOP to turn over most of the remaining funds and apply them to Myers's obligation. The government disclaimed any efforts to target Myers's prison wages. But as to the accumulated deposits from family and friends, the government invoked the Mandatory Victims Restitution Act (MVRA), which requires an inmate who "receives substantial resources from any source, including inheritance, settlement, or other judgment, . . . to apply the value of such resources to any restitution or fine still owed." Pub. L. No. 104-132, § 206(a), 110 Stat. 1227, 1235–36 (1996) (codified at 18 U.S.C. § 3664(n)).

The district court granted the turnover motion. *United States v. Myers*, No. 2:04-cr-173, 2023 WL 7017707, at *4 (E.D. Wash. May 10, 2023). It first rejected Myers's request for an evidentiary hearing, concluding that the government had presented sufficient evidence of the trust account's

composition. *Id.* at *1. The district court then addressed its
authority to turn over Myers's funds under § 3664(n). It
noted that the statute covers more than just lump-sum
payments from a single source. Instead, as other courts have
recognized, "substantial resources" includes "substantial
aggregated sums." *Id.* at *2. And while the district court did
not understand § 3664(n) to cover the gradual accumulation
of prison wages, it claimed authority to turn over substantial
aggregated deposits from "an individual, including a friend
or family member." *Id.*

The final question, then, was whether the balance of
Myers's account—sans prison wages—was a "substantial"
resource. In conducting that analysis, the district court
assumed that all of Myers's prison wages from 2022
remained in the account and were not spent at the
commissary or sent to other individuals. *Id.* at *3. It then
subtracted those wages ($388.80) from the total account
balance ($1,622.53) and concluded that $1,233.73 was
subject to turnover. *Id.* Analogizing to other § 3664(n)
cases, the district court concluded that $1,233.73 is
"reasonably found to be a substantial resource." *Id.* at *2.
The district court thus directed BOP to turn over that amount
as payment toward Myers's unpaid restitution. Myers timely
appealed.

## II

We have jurisdiction under 28 U.S.C. § 1291. We
review de novo decisions involving the interpretation of
federal restitution laws. *United States v. Swenson*, 971 F.3d
977, 980–81 (9th Cir. 2020). The denial of an evidentiary
hearing is reviewed for abuse of discretion. *United States v.
Cook*, 808 F.3d 1195, 1201 (9th Cir. 2015) (citing *United
States v. Hoang*, 486 F.3d 1156, 1163 (9th Cir. 2007)).

### III

Myers raises three arguments on appeal. First, he maintains that § 3664(n) covers only "one-time, lump-sum windfalls and sudden financial injections" from a single source—not the accumulation of small, periodic deposits from family and friends. Second, Myers asserts that the district court's turnover order unlawfully superseded the judgment's restitution provisions. Third, he claims that the district court abused its discretion in declining to hold an evidentiary hearing on the composition of his trust account. Each argument falls short.

### A

We begin with Myers's challenge under § 3664(n). As always, we start with the text. *Bartenwerfer v. Buckley*, 598 U.S. 69, 74 (2023). Section 3664(n) provides that if an inmate "receives substantial resources from any source, including inheritance, settlement, or other judgment," he "shall be required to apply the value of such resources to any restitution or fine still owed." 18 U.S.C. § 3664(n). In interpreting this provision, we face two related questions. Is § 3664(n) restricted to payments from a single source? And does the statute's reference to "inheritance, settlement, or other judgment" limit its application to sudden financial windfalls? Addressing each question in turn, we hold that § 3664(n) applies not just to one-time financial windfalls, but also to substantial aggregated sums from multiple sources—like family and friends—that gradually accrue in an inmate's trust account.

### 1

Start with whether § 3664(n) is limited to payments from a single source. Myers points to the phrase "any source,"

arguing that Congress's use of the singular form suggests that § 3664(n) only authorizes turnover of payments from a single source, not accumulated deposits from different individuals.  The problem for Myers is that we ordinarily read singular forms in statutes as plural.  In interpreting the U.S. Code, the Dictionary Act tells us to assume "words importing the singular include and apply to several persons, parties, or things," unless "context indicates otherwise."  1 U.S.C. § 1; *accord Niz-Chavez v. Garland*, 593 U.S. 155, 164–65 (2021).  This long-standing rule of interpretation— the singular includes the plural—"is simply a matter of common sense and everyday linguistic experience."  Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 130 (2012); *see Schott v. Comm'r of Internal Revenue*, 319 F.3d 1203, 1206 (9th Cir. 2003).  Against this backdrop, Myers puts too much stock in the singular "source."  "[A]ny source" includes payments from multiple, independent sources that, when combined, amount to "substantial resources."

The Sixth Circuit reached the same conclusion.  In *United States v. Carson*, the defendant conceded that some of the money in his inmate trust account came from his family.  55 F.4th 1053, 1058 (6th Cir. 2022).  And the government asserted that the defendant's account also included COVID-19 stimulus checks.  *Id.*  The Sixth Circuit explained that "[i]f the record clearly showed that all of the garnished funds came from these sources and were sufficiently 'substantial,' the district court could've permissibly ordered garnishment under § 3664(n)."  *Id.* (citing *United States v. White*, 745 F. App'x 646, 648 (7th Cir. 2018); *United States v. Robinson*, 467 F. App'x 100, 102 (3d Cir. 2012)).  In other words, *Carson* recognized that

§ 3664(n) authorizes turnover of substantial funds from multiple sources.

*United States v. Kidd* is similar, despite Myers's argument that the Eighth Circuit adopted a single-source reading of § 3664(n). 23 F.4th 781 (8th Cir. 2022). In declining to authorize turnover of an inmate's prison wages, the Eighth Circuit noted that Congress drafted § 3664(n) to "focus[] on single transactions from outside *sources*." *Id.* at 787 (emphasis added). The plural form shows that the panel understood § 3664(n) to cover payments from more than one outside source. Indeed, in remanding the case to the district court, the Eighth Circuit explained that "the $5,500 at issue could include the receipt of 'substantial resources' from outside *sources* that would be subject to § 3664(n)." *Id.* (emphasis added). *Kidd* does not suggest that § 3664(n) applies only to payments from a single source.

The dissent takes issue with any interpretation of § 3664(n) that authorizes turnover of substantial aggregated sums from multiple sources. Dissent at 24–25. It focuses on the word "receives," arguing that the statute applies only to resources that are substantial at the time of receipt. *Id.* That is not the best reading of the statute. For starters, the dissent's interpretation runs up against "any source." The Dictionary Act's default rule is clear: read the singular "source" to include the plural. *See supra*, at 8. That means § 3664(n) applies to any inmate who "receives substantial resources" from multiple sources during his incarceration.

As the dissent recognizes, the Dictionary Act does not govern every case. Dissent at 25 (citing *Friends of the Inyo v. U.S. Forest Serv.*, 103 F.4th 543, 554 (9th Cir. 2024)). The Act's default rules do not apply if "the context indicates otherwise." 1 U.S.C. § 1. That exception kicks in, however,

"only when its use would produce genuine discord and is necessary to 'excus[e] the court from forcing a square peg into a round hole.'" *United States v. Jackson*, 480 F.3d 1014, 1019–20 (9th Cir. 2007) (quoting *Rowland v. Cal. Men's Colony*, 506 U.S. 194, 200 (1993)). Far more than "potential ambiguity" is required before we can depart from the Dictionary Act's instructions. Dissent at 25.

The dissent makes the same mistake with respect to timing. Because § 3664(n) uses the present tense "receives," the dissent infers that resources must be substantial at the moment they are received. Dissent at 24. In other words, on the dissent's view, resources cannot be combined to *become* substantial and still fall within the statute's ambit. Again, the Dictionary Act tells us otherwise. "[W]ords used in the present tense include the future as well as the present." 1 U.S.C. § 1; *see Carr v. United States*, 560 U.S. 438, 449 (2010) (a statute's "undeviating use of the present tense" can be a "striking indic[ator]" of its "prospective orientation" (quoting *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 59 (1987))). Section 3664(n) therefore imposes a turnover obligation on any inmate who "receives" substantial resources—now or in the future. While resources from multiple sources may not be substantial at the time of receipt, they can reach that threshold if they accumulate over time.

In sum, § 3664(n) authorizes a district court to turn over "substantial resources from any source" that are the combination of payments from multiple, independent sources, including deposits from family and friends. While Congress used the singular "source," it's a truism of statutory interpretation that "singulars normally include plurals." *Schott*, 319 F.3d at 1206. So "any source" includes deposits in an inmate's trust account from plural sources.

And once the combined deposits form a "substantial resource[]," they are subject to turnover under § 3664(n).

## 2

Myers also argues that "any source" must be known by the company it keeps: "inheritance, settlement, or other judgment." On that view, § 3664(n) only covers the kinds of income listed in the statute—windfalls or sudden financial injections. Because the cash deposits from family and friends were not "one-time, lump-sum" financial windfalls akin to an inheritance or settlement, Myers says they fall outside the ambit of § 3664(n).

Myers's argument runs headfirst into the plain meaning of "any." "Read naturally, the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'" *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 219 (2008) (quoting *United States v. Gonzales*, 520 U.S. 1, 5 (1997)) (cleaned up). The Supreme Court has repeatedly endorsed this broad understanding. *See Small v. United States*, 544 U.S. 385, 396–97 (2005) (Thomas, J., dissenting) (listing examples).[2] And we have similarly explained that the "word 'any' is generally used in the sense of 'all' or 'every' and its meaning is most comprehensive." *Do Sung Uhm v. Humana, Inc.*, 620 F.3d 1134, 1153 (9th Cir. 2010) (quoting *Fleck v. KDI Sylvan Pools Inc.*, 981 F.2d 107, 115 (3d Cir. 1992)); *see United States v. Lillard*, 935 F.3d 827, 837 (9th Cir. 2019) (Bennett, J., dissenting) ("The broad

---

[2] The dissent overstates our reliance on *Small*. Dissent at 27. *Small* lists examples that reinforce the Supreme Court's broad reading of "any." This supports our holding with which the dissent agrees—that "any source" is not limited to windfalls or other sudden financial injections. *Id.* at 24–25, 27. As the dissent notes, Justice Thomas's dissent in *Small* addresses "scope, not quantity." *Id.* at 27.

language used throughout [§ 3664(n)] reinforces that Congress intended this subsection to apply broadly . . . .”). “[S]ubstantial resources from any source” means what it says: § 3664(n) is not limited to windfalls or sudden financial injections.

Of course, the phrase "any source," like all statutory language, must be read in context. *E.g.*, *Hibbs v. Winn*, 542 U.S. 88, 101 (2004). And that context is critical when interpreting § 3664(n). After all, the statute does not reference "any source" alone. It lists examples—"including inheritance, settlement, or other judgment"—often associated with sudden financial windfalls.

That non-exhaustive list, however, does not cabin § 3664(n)'s otherwise broad scope. The statute uses a far-reaching phrase—"any source"—followed by another expansive word—"including." *See Bloate v. United States*, 559 U.S. 196, 207 (2010) ("[I]ncluding" is "an expansive or illustrative term"). It then lists three examples—inheritances, settlements, and other judgments—that Congress wanted to make clear are covered by the statute. *See* Scalia & Garner, *supra*, at 204 ("Following the general term with specifics can serve the function of making doubly sure that the broad (and intended-to-be-broad) general term is taken to include the specifics."). We have suggested as much. In *United States v. Rich*, we singled out the phrase "including inheritance, settlement, or other judgment" in explaining that "all of a convicted defendant's income and assets may be subject to restitution." 603 F.3d 722, 726 (9th Cir. 2010) (quoting 18 U.S.C. § 3664(n)); *see also United States v. Kaczynski*, 416 F.3d 971, 975 & n.7 (9th Cir. 2005) (suggesting that § 3664(n) authorizes turnover of substantial funds an inmate receives for "ordinary property" made more valuable because of his notoriety). *Rich* shows that the three

examples in § 3664(n) illustrate the statute's breadth, not its limitations. Reading them to constrain § 3664(n) would conflict with Congress's use of the expansive words "any" and "including."

Myers says this construction only makes sense if there is reason to specify that inheritances, settlements, and other judgments are subject to turnover under § 3664(n). Congress may have employed a belt-and-suspenders approach for several reasons. For one, the U.S. Code sometimes distinguishes inheritances, settlements, and judgments from regular deposits. A provision of the tax code, revised the same year as § 3664(n), expressly excludes many settlements and judgments from gross income. *See* Pub. L. No. 104-188, § 1605(a)–(c), 110 Stat. 1755, 1838 (1996) (codified at 26 U.S.C. § 104(a)(2)). Another provision excludes from gross income the value of property acquired by inheritance. 26 U.S.C. § 102(a). That § 3664(n) singles out the same sources for inclusion suggests that Congress envisioned a different approach with the MVRA.

Plus, § 3664(n) was enacted when Congress was particularly concerned about prisoner lawsuits. The Prison Litigation Reform Act (PLRA)—passed by the same Congress as the MVRA—instituted several reforms to "reduce the quantity" of prisoner suits. *Jones v. Bock*, 549 U.S. 199, 203–04 (2007) (quoting *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). It would make sense for Congress to warn that even if a prisoner can successfully navigate the PLRA's procedural and substantive bars, any ensuing monetary judgment still faces turnover under § 3664(n). Thus, the "more logical interpretation of § 3664(n)" is that Congress singled out inheritances, settlements, and other judgments to eliminate any doubt about their inclusion. *Kidd*, 23 F.4th at 786–87.

Myers responds that Congress had no reason to make doubly sure that § 3664(n) covers inheritances, settlements, and other judgments. He admits that "substantial resources from any source" is so broad that "no reasonable legislator" could think that it excludes inheritances, settlements, or other judgments. So unless the statute is limited to sudden financial windfalls, those specific sources of income are allegedly redundant. But Congress may use a "belt and suspenders approach" to dispel any doubt about a statute's scope. *See Atl. Richfield Co. v. Christian*, 590 U.S. 1, 14 n.5 (2020) ("[S]ometimes the better overall reading of the statute contains some redundancy." (quoting *Rimini St., Inc. v. Oracle USA, Inc.*, 586 U.S. 334, 346 (2019))).

Myers's reading of § 3664(n) also relies on assumptions about inheritances, settlements, and other judgments that do not always bear out in practice. An inheritance or settlement need not be a financial windfall. Plenty of inheritances, settlements, and other judgments are for nominal amounts. Nor is an inheritance or settlement necessarily a "one-time, lump-sum" payment. Those sources of income are regularly distributed in periodic installments over time. So, contrary to Myers's view, Congress's reference to "inheritance, settlement, or other judgment" does not necessarily mean that "any source" is limited to windfalls or sudden financial injections.

Myers finds support in a handful of cases limiting § 3664(n) to sudden financial windfalls, however defined. Take the Fifth Circuit's decision in *United States v. Hughes*, 914 F.3d 947 (5th Cir. 2019). With little analysis, the *Hughes* panel simply stated: "[W]e think [§ 3664(n)] refers to windfalls or sudden financial injections." 914 F.3d at 951. And other courts have signaled agreement with *Hughes* without doing their own statutory interpretation. *See, e.g.*,

*United States v. Saemisch*, 70 F.4th 1, 6 (1st Cir. 2023); *Carson*, 55 F.4th at 1056.

Those cases are not persuasive. They largely mimic *Hughes*, which focused on the separate question of whether § 3664(n) applies to the gradual accumulation of prison wages.[3] More importantly, none squarely addresses the question here: Does § 3664(n) cover the gradual accumulation of periodic deposits from family and friends in an inmate's trust account?

The better-reasoned cases recognize what § 3664(n)'s text makes clear: the statute is not limited to windfalls or sudden financial injections. The Eighth Circuit acknowledged the breadth of "any source" in rejecting the argument "that § 3664(n) refers *only* to windfalls or sudden financial injections." *Kidd*, 23 F.4th at 786–87 (internal quotation marks omitted). And the Tenth Circuit noted, though in an unpublished opinion, that "the MVRA requires prisoners to apply 'substantial resources from *any source*'— not just from windfalls—to their restitution obligations." *United States v. Elwood*, 757 F. App'x 731, 736 n.5 (10th Cir. 2018) (quoting 18 U.S.C. § 3664(n)).[4] These cases underscore that § 3664(n) is not as limited as Myers suggests.

---

[3] We need not answer that question. Because the government has never sought Myers's prison wages, we leave for another day whether § 3664(n)—or any other provision—authorizes turnover of an inmate's prison wages.

[4] The Tenth Circuit permits citation to unpublished decisions for their persuasive value. 10th Cir. R. 32.1(A); *see Good v. Dep't of Educ.*, 121 F.4th 772, 789 n.8 (10th Cir. 2024) ("We cite to unpublished decisions only for their persuasive value, recognizing that they do not constitute binding precedent.").

In a final attempt to cabin § 3664(n), Myers appeals to the structure of federal restitution law.[5]  He points to another provision, 18 U.S.C. § 3664(k), which allows a district court to modify a defendant's restitution payment schedule in some cases.  Under § 3664(k), a defendant must notify the district court and the government of "any material change in the defendant's economic circumstances that might affect [his] ability to pay restitution."  18 U.S.C. § 3664(k).  The district court can also accept notification from the government or the victim.  *Id.*  The district court "may" then exercise its discretion to "adjust the [defendant's] payment schedule, or require immediate payment in full, as the interests of justice require."  *Id.*  On Myers's view, this "broad and discretionary rule" compels a narrow interpretation of § 3664(n).  Because if the gradual accumulation of small deposits from family and friends triggers turnover under § 3664(n), then what is "structurally intended to be the limited exception to § 3664(k)" would supposedly "swallow the rule."

That's wrong.  Section 3664(n) is not a "limited exception" to § 3664(k).  Section 3664(n) is an independent provision addressing a specific scenario: an inmate who receives substantial resources while in prison.  Section 3664(k), by contrast, is not limited to the prison context.  More importantly, § 3664(k) gives district courts discretion to modify a payment schedule in "the interests of justice."  But, for prisoners, § 3664(n) establishes an automatic payment requirement; a district court cannot balance the

---

[5] Myers also argues that restricting § 3664(n) to sudden windfalls is necessary to avoid concerns about unconstitutional vagueness.  Because he did not make that argument before the district court, we do not consider it here.  *See AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1213–14 (9th Cir. 2020).

equities, and it need not wait for formal notification of a change in an inmate's financial circumstances before turning over his funds. Section 3664(n) thus reflects Congress's "weighty policy determination" that inmates must put substantial resources received during their incarceration toward unpaid restitution. *See United States v. Novak*, 476 F.3d 1041, 1043 (9th Cir. 2007) (en banc). And again, "substantial resources from any source" includes accumulated deposits from an inmate's family and friends.

What's more, Myers cites no authority for the view that § 3664(n) and § 3664(k) cannot serve overlapping roles in the restitution-enforcement scheme. It's no wonder why. The MVRA contemplates enforcement of a restitution order through "[all] available and reasonable means." 18 U.S.C. § 3664(m)(1)(A)(ii); *see also United States v. Holden*, 908 F.3d 395, 405 (9th Cir. 2018) (identifying both § 3664(n) and § 3664(k) as mechanisms for seizing newly acquired funds). Given that direction, and the distinct requirements for turnover under § 3664(n) and § 3664(k), we can give effect to each provision despite the occasional overlap in application. *See J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred Int'l, Inc.*, 534 U.S. 124, 144 (2001).

\* \* \*

The phrase "substantial resources from any source" is not limited to payments from single sources. 18 U.S.C. § 3664(n). Nor does it refer only to windfalls or sudden financial injections. Thus, the district court properly invoked § 3664(n) to turn over deposits from family and

friends that accrued to form a substantial sum in Myers's inmate trust account.[6]

### B

We turn next to Myers's argument that the district court's turnover order contravenes the judgment's restitution provisions. In his view, the district court erred by requiring him "to pay more than the terms of his restitution order command." We disagree.

Myers's restitution order has two conditions. Payments must "begin immediately." And payments "shall not be less than 25% of [Myers's] monthly gross earnings" while incarcerated. Neither condition kept the district court from turning over extra funds under § 3664(n). The statute says that if an inmate receives substantial resources while in prison, he "*shall be required* to apply the value of such resources" to his unpaid restitution. 18 U.S.C. § 3664(n) (emphasis added). That language is self-executing—a district court need not amend an inmate's restitution order before authorizing turnover under § 3664(n). *See, e.g.*, *Carson*, 55 F.4th at 1056 ("[S]ection 3664(n) provides for automatic modification, provided that the necessary findings are made.").

Even if § 3664(n) were not automatic, applying it here tracks Myers's restitution order. The order sets a floor on Myers's restitution payments: they "shall not be *less than*" 25% of his monthly prison earnings. The "not less than" language does not prevent the government from collecting more than the minimum payment under the restitution order.

---

[6] Myers does not contest the district court's conclusion that the $1,233.73 in accumulated deposits is a "substantial resource" under § 3664(n). So we need not address when resources are "substantial" in this context.

*See United States v. Lemoine*, 546 F.3d 1042, 1044, 1050 (9th Cir. 2008). That makes sense. The restitution order "only accounted for funds that [Myers] either possessed or was reasonably expected to possess when the order was entered." *Saemisch*, 70 F.4th at 9 (citing 18 U.S.C. § 3664(f)(2) (restitution orders must account for a defendant's current assets and projected earnings)). So it would be odd to construe the restitution order's conditions as a bar to the district court's authority under § 3664(n) to authorize turnover of newly acquired funds.

Myers counters that while the restitution order requires him to begin making payments immediately, it does not make the entire restitution amount due immediately. As the argument goes, the government thus lacks authority to force payments exceeding "25% of [Myers's] monthly gross earnings." Myers's argument relies on a false premise—the restitution order *does* make the entire amount due immediately. Generally, a "person sentenced to pay a fine or other monetary penalty, including restitution, shall make such payment immediately, unless, in the interest of justice, the court provides for payment on a date certain or in installments." 18 U.S.C. § 3572(d)(1); *see also United States v. Mills*, 991 F.2d 609, 612 (9th Cir. 1993) ("[A] restitution order is enforceable as a lien upon *all* of the defendant's property at the time judgment is entered.").

In requiring that payment "begin immediately," the district court did not set a payment schedule, dictate payment on a date certain, or specify an installment plan. The restitution order thus compels Myers to satisfy his restitution obligation "immediately." 18 U.S.C. § 3572(d)(1); *see United States v. Wykoff*, 839 F.3d 581, 582 (7th Cir. 2016) ("The federal criminal code *requires* that restitution be paid immediately unless the district court provides

otherwise . . . .").  The government's effort to speed up the process with § 3664(n) comports with that requirement.

C

Finally, we address Myers's claim that the district court abused its discretion in declining to hold an evidentiary hearing on the composition of his trust account.  Recall that Myers routinely spent his funds at the prison commissary and distributed them to other individuals.  That fact, combined with the government disclaiming seizure of Myers's prison wages under § 3664(n), created a practical problem.  How could the district court determine which of the remaining funds in Myers's trust account were from outside deposits versus prison wages?

Myers argues that the proper course was to conduct an evidentiary hearing to determine which of the funds could be "specifically identified" as prison wages.  The district court took a different tack.  At the government's suggestion, the district court limited its analysis to transactions from 2022.  Because there was no way to differentiate between Myers's prison wages and other funds being spent, the district court assumed that all his prison wages from 2022 remained in the account.  It then deducted those wages ($388.80) from the current balance ($1,622.53), yielding the final turnover of $1,233.73.[7]  *Myers*, 2023 WL 7017707, at \*3.  Concluding that the government had "presented the necessary evidence" to make this calculation, the district court declined Myers's request for an evidentiary hearing.  *Id.* at \*1.

---

[7] The government's other proposals—a pro rata approach and a formula that traced the deposits in Myers's account—would have led to slightly larger turnovers, leaving Myers with less money.

That decision was not an abuse of discretion. First, the statute does not require an evidentiary hearing following a turnover motion under § 3664(n). *See United States v. Rice*, 38 F.3d 1536, 1546 (9th Cir. 1994). The statute contemplates an evidentiary hearing when initially imposing restitution. 18 U.S.C. § 3664(d)(4). But even then, the decision to hold such a hearing is discretionary. *Id.* ("After reviewing the report of the probation officer, the court *may* require additional documentation or hear testimony." (emphasis added)). The district court based its analysis on a comprehensive BOP ledger listing every deposit and withdrawal from Myers's trust account beginning in 2013. It's not clear what additional information would have been elicited at an evidentiary hearing that was not already available to the district court. It was therefore not an abuse of discretion to rely on the existing documentary evidence in resolving the turnover motion. *See Rice*, 38 F.3d at 1546.

Second, we see nothing wrong with the district court's method for segregating Myers's prison wages. The BOP ledger revealed that Myers received over $30,500 in total deposits from 2013 to 2022. Tracing each of these deposits to see which were spent over nine years is impractical. And because Myers's total spending far exceeded his annual prison wages, the district court's focus on the 2022 transactions reasonably and conservatively accounted for all remaining wages that Myers earned beginning in 2013. Indeed, the district court's turnover order ($1,233.73)— which assumed that Myers did not spend any prison wages from 2022—was less than half of Myers's total prison wages since 2013 ($2,747.25). It was well within the district court's discretion to employ this method and forgo an evidentiary hearing.

IV

Congress enacted the MVRA "to help victims of crime secure prompt restitution." *Dolan v. United States*, 560 U.S. 605, 613 (2010). To that end, § 3664(n) authorizes turnover of "substantial resources" that an inmate receives "from any source"—not just payments from a single source, and not just windfalls or sudden financial injections. 18 U.S.C. § 3664(n). Thus, the district court's turnover order did not unlawfully override the judgment's restitution provisions. Nor did the district court abuse its discretion in declining to hold an evidentiary hearing on the composition of Myers's trust account.

**AFFIRMED.**

---

McKEOWN, Circuit Judge, dissenting:

Under 18 U.S.C. § 3664(n), a defendant who "receives substantial resources from any source, including inheritance, settlement, or other judgment, during a period of incarceration" is required to "apply the value of such resources to any restitution or fine still owed." The most logical interpretation of this statute is that it applies only to resources that are substantial at the time of receipt. Because I disagree with the majority's interpretation, I respectfully dissent.

The text of § 3664(n), though brief, contains key terms— "receives," "substantial resources," "from any source," "including inheritance, settlement, or other judgment." Although the statute applies during a defendant's incarceration, it must be read in conjunction with 18 U.S.C. § 3664(k), which requires both incarcerated and released

defendants to notify the court and the Attorney General "of any material change in the defendant's economic circumstances that might affect the defendant's ability to pay restitution." Both subsections serve the common policy goal of ensuring victims receive restitution.

Section 3664(n) is susceptible to competing interpretations. It might apply only to windfalls, in line with Myers's position and the view taken by the First, Fifth, and Sixth Circuits. *See United States v. Saemisch*, 70 F.4th 1, 6 (1st Cir. 2023) ("[T]he MVRA requires certain defendants to apply to their restitution obligation any sudden windfalls they receive."); *United States v. Hughes*, 914 F.3d 947, 951 (5th Cir. 2019) ("[W]e think [§ 3664(n)] refers to windfalls or sudden financial injections."); *United States v. Carson*, 55 F.4th 1053, 1056 (6th Cir. 2022) (describing § 3664(n) as a "windfall provision"). This approach interprets the phrase "including inheritance, settlement, or other judgment" to cabin the nature of the source and limit the provision to singular, large, and unanticipated gains. Alternatively, as the majority urges, § 3664(n) could apply to any substantial aggregated amount, including amounts originating from multiple distinct sources over any period. No appellate court has adopted this view. Or § 3664(n) could apply to a substantial amount, from any source, so long as the amount is substantial *at the time it is received*.

I think the last interpretation—that substantiality is measured at the time of receipt—is the most straightforward and logical reading of the text based on § 3664(n)'s use of the present tense "receives." The parties' and the majority's arguments in favor of the two other alternatives—that § 3664(n) applies only to windfalls, or that it applies to aggregated amounts—do not persuade me otherwise.

I agree with the majority's rejection of the first construction, which would limit § 3664(n) to only windfalls. The Fifth Circuit's decision in *Hughes*, and later cases adopting *Hughes*'s reasoning, offer little rationale for why § 3664(n) should apply only to "windfalls or sudden financial injections," but not to other substantial amounts. *Hughes*, 914 F.3d at 951; *see Saemisch*, 70 F.4th at 6; *Carson*, 55 F.4th at 1056. As the majority observes, not all sources are unforeseen windfalls. For example, an inheritance from an ailing spouse or relative may be expected. Nor must an amount be huge in order to be substantial. What matters, according to § 3664(n)'s text, is that the amount is "substantial"—not that it is unforeseen or otherwise extraordinary.

But applying § 3664(n) to any substantial aggregated amount, as the majority proposes, is also not a natural interpretation of the statute. Rather, in my view, reading § 3664(n) to require substantiality at the time of receipt makes the most sense.

To begin, the statutory text applies to any person who "receives substantial resources." It does not, for instance, apply to individuals who "possess," "control," "accumulate," or "rack up" such resources. Nor does it apply to individuals who "have received" substantial resources. As we know, when construing a statute, "Congress' use of a verb tense is significant." *United States v. Wilson*, 503 U.S. 329, 333 (1992). Although "words used in the present tense include the future as well as the present," 1 U.S.C. § 1, "the present tense generally does not include the past." *Carr v. United States*, 560 U.S. 438, 448 (2010). Because § 3664(n) uses the present-tense "receives," it requires contemporaneity: the resources must be substantial at the time of receipt.

The majority contends that the word "receives," which includes a defendant's present and future receipt of resources, applies to resources that are not yet substantial but will become substantial in the future when combined with other resources. Including resources that could, at some point in the future, become substantial would create a moving target for defendants attempting to comply with § 3664(n).

My proposed reading avoids potential ambiguity with respect to whether the singular "any source" necessarily includes the plural "any sources." *See Friends of the Inyo v. United States Forest Serv.*, 103 F.4th 543, 554 (9th Cir. 2024) (noting that the Dictionary Act "does not transform every use of the singular 'a' into the plural 'several'" (quoting *Niz-Chavez v. Garland*, 593 U.S. 155, 164 (2021))). The relevant unit of analysis is the individual transaction, which naturally stems from only one source. Section 3664(n)'s listed examples support this interpretation, as each example—inheritance, settlement, or judgment—is a single event. I agree with the majority that the list is illustrative, not limiting, and here, it helpfully furnishes three examples where a defendant receives substantial resources in a discrete instance.

This approach also avoids subjecting prison wages to § 3664(n)'s turnover requirements. Because prison wages are not substantial when deposited into an inmate's account, they would not trigger § 3664(n), regardless of whether those wages eventually accumulate. There is an emerging consensus across circuits exempting prison wages from § 3664(n). *See Saemisch*, 70 F.4th at 11 (First Circuit); *Hughes*, 914 F.3d at 951 (Fifth Circuit); *Carson*, 55 F.4th at 1057 (Sixth Circuit); *United States v. Kidd*, 23 F.4th 781, 787 (8th Cir. 2022); *United States v. Poff*, 781 F. App'x 593,

595 (9th Cir. 2019) (unpublished). In light of this consensus—and given the government's express concession that prison wages are exempt from § 3664(n)—I would adopt a construction of § 3664(n) that would not risk subjecting prison wages to mandatory turnover.

The majority "leaves for another day" whether § 3664(n) applies to prison wages. But construing the statute in a way that leaves that issue hanging risks an unanticipated result. If § 3664(n) applies to any aggregated amount, as long as that amount eventually becomes "substantial," prison wages could easily be swept up in a turnover of the commingled funds that sit in a prisoner's account. Nor could the majority remedy this issue by simply declaring prison wages exempt, for an exemption would be unmoored from the text and inconsistent with the majority's reading. Declaring one would run roughshod over the conventions of statutory interpretation. In contrast, my construction provides a practical and principled approach to prison wages so that they are not swept up in § 3664(n)'s mandatory turnover requirement.

Of course, should an inmate accrue substantial resources—for instance, by receiving many small transfers from friends, family, or other sources and accumulating rather than spending those sums—§ 3664(k) can kick in. This scenario would present a "material change in the defendant's economic circumstances that might affect the defendant's ability to pay restitution." 18 U.S.C. § 3664(k). The defendant would be required to notify the court and the Attorney General of the "change of circumstances," which would permit the court or the victim to seek adjustment or immediate payment of restitution.

The majority's contrary argument suffers from several weaknesses. To start, although § 3664(n) applies when a defendant receives resources "during a period of incarceration," this phrase distinguishes § 3664(n) (which applies only during incarceration) from § 3664(k) (which applies any time after sentencing). This phrase does not, however, provide a basis to combine resources received during incarceration when evaluating substantiality. And the majority identifies no language in the statute that specifically invites or permits aggregation.

Nor does the majority's reliance on other authority—including *Kidd* and *Small*—help its conclusions. It is curious that the majority relies on *Kidd.* There, the Eighth Circuit rejected the notion that § 3664(n) "refers only to 'windfalls or sudden financial injections.'" *Kidd*, 23 F.4th at 787. On that point the majority and I agree. But the analysis in *Kidd* is not aligned with the majority's reading of the statutory text. The court in *Kidd* stated that Congress, in authoring § 3664(n), "focused on single transactions from outside sources," thereby excluding prison wages from mandatory turnover under § 3664(n). *Id.* Although the quoted excerpt refers to outside "sources" as plural, that use flowed from the context of the sentence, not from *Kidd*'s interpretation of the statute. The majority appears to misread the court's holding, which limits § 3664(n) to "*single transactions*" as opposed to gradual accruals. *Id.* (emphasis added).

The effort to rely on Justice Thomas's dissent in *Small* fares no better. *Small v. United States*, 544 U.S. 385, 396 (2005) (Thomas, J., dissenting). That dissent addresses the broad sweep of "any" with respect to scope, not quantity, and is at odds with the Court's majority opinion. Nor do the other cases cited by the majority—*Carson*, *White*, and *Robinson*—expressly endorse the "multiple sources" reading of

§ 3664(n). The Sixth Circuit in *Carson* says that "[i]f the record clearly showed that all of the garnished funds came from [Carson's family and stimulus checks] and were sufficiently 'substantial,'" § 3664(n) would apply. *Carson*, 55 F.4th at 1058. But that is the extent of the guidance *Carson* provides. The Sixth Circuit did not say, for instance, that those funds need only be "substantial" in the aggregate or that Carson's family and the stimulus checks could be grouped together analytically. The Seventh Circuit in *White* simply clarified that money from family is not automatically exempt from § 3664(n). *United States v. White*, 745 F. App'x 646, 648 (7th Cir. 2018) (unpublished). And *Robinson* does not cite to or even apply in the § 3664(n) context. *United States v. Robinson*, 467 F. App'x 100, 102 (3d Cir. 2012) (unpublished). The majority opinion identifies no authority adopting its proposed construction of § 3664(n).

Finally, the majority's citations to the Prison Litigation Reform Act ("PLRA"), 42 U.S. § 1997e *et seq.*, and revisions to the tax code are neither relevant nor persuasive in this context. The PLRA shares no language in common with the MVRA, and congressional efforts to eliminate prisoner suits have nothing to do with restitution provisions. And although the tax code was revised the same year and happens to single out inheritances and settlements for special treatment, it has nothing to do with restitution, is not directed towards the same subject as the MVRA, and doesn't even use the same turns of phrase. This is not an instance where the canon of *in pari materia* might apply. *Cf. Erlenbaugh v. United States*, 409 U.S. 239, 243 (1972) (applying canon where statutes "pertain[ing] to the same subject . . . should therefore be construed 'as if they were one law.'"). "Without more, . . . '[t]he mere fact that the words are used in each instance is not a sufficient reason for treating a decision on

the meaning of the words of one statute as authoritative on the construction of another statute.'" Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 172–73 (2012). Congress' putative intent in passing entirely distinct statutes should not guide our interpretation of § 3664(n).

I conclude that § 3664(n) applies only to resources that are substantial at the time of receipt. Because the district court assessed whether Myers' trust account was a substantial amount in total, rather than analyzing individual transactions for substantiality, I would vacate the order authorizing payment and remand for the district court to conduct a transaction-by-transaction analysis.[1] For these reasons, I respectfully dissent.

---

[1] Although I would remand, I agree in principle with the majority's view in Part B that the district court did not err by requiring Myers "to pay more than the terms of his restitution order command."